UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS R. SNELLING (#262770),

      Plaintiff,

                      CASE NO. 2:15-CV-13797
                      JUDGE VICTORIA A. ROBERTS
                      MAGISTRATE JUDGE ANTHONY P. PATTI

  v.

PAUL KLEE, et al.,

      Defendants.

_____/

## ORDER GRANTING IN PART and DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [ECF No. 15; ECF No. 32]

**I.   INTRODUCTION**

Thomas Roger Snelling ("Snelling") filed this action against twenty-one defendants, all of whom are corrections officers, wardens, and employees at the Gus Harrison Correctional Facility ("ARF"). He alleges that the Defendants violated the First, Fifth, Eighth and Fourteenth Amendments, as well as 42 U.S.C. § 1983, in their treatment of him.

Defendants filed this motion for summary judgment under Fed. R. Civ. P. 56. They argue that: (1) Snelling failed to adhere to Michigan Department of Corrections' ("MDOC") grievance procedures; and, (2) the Eleventh Amendment bars Snelling's official capacity claims.

Fort the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions for summary judgment.

1

## II.   BACKGROUND

Snelling is incarcerated at the MDOC's Marquette Branch Prison. On October 7, 2015, while at the ARF, Snelling filed a complaint in the U.S. District Court for the Western District of Michigan against twenty-one Defendants, each of whom was sued in his or her official and personal capacities.

On October 26, 2015, Judge Quist entered an order of partial dismissal and transferred the case to this Court. He dismissed two of the Defendants "for failure to state a claim pursuant to 28 U.S.C. § 1915A, 42 U.S.C. § 1997e(c)." Nineteen Defendants remain.

### A. Motions

Eighteen Defendants filed a motion for summary judgment. Paul Klee, Donald Ricumstrict, Kenneth Salisbury, James Eaton, Richard Newsome, Stephan Braman, Thomas Schulz, Steve Haines, Brian Stuart, Adam Gust, Charles Clark, David Hill, Paul Stoyk, Bruce Barden, Steven Kindinger, Gary King, Brian Evers, and Angela Holman joined in one motion. David Martin filed a separate motion, adopting the motion filed by the others. Each motion contends that (a) Snelling failed to exhaust his grievances and (b) the official capacity claims should be dismissed.

The motions are fully briefed.

## III.   STANDARD OF REVIEW

### A.  Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

   "The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

   Summary judgment is appropriate if the evidence favoring the nonmoving party is

3

merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

## IV.   DISCUSSION

A. Snelling bases his claims on the First, Fifth, Eighth and Fourteenth Amendments, as well as 42 U.S.C. § 1983.

Snelling's complaint concerns alleged occurrences between April 17, 2015 and May 18, 2015. His first and third causes of action – excessive and unjustifiable use of force – describe an April 17, 2015 assault, after which Defendants placed him in solitary confinement for several days without proper medical care or a disciplinary hearing. Snelling's second cause of action – conspiracy – alleges that, between April 17, 2015 and May 18, 2015, Defendants conspired to fabricate false charges and disciplinary actions against him, to conceal the incident of April 17. Snelling's fourth cause of action – retaliation for exercising constitutional rights – alleges that Defendants issued disciplinary actions, placed him in a Secure Status Residential Treatment Program ("SSRTP"), and revoked his access to religious services and the law library.

Given the Supreme Court's direction regarding the interpretation of a *pro se* complaint, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and particular sources of constitutional protection, *see Albright v. Oliver*, 510 U.S. 266, 273 (1994), the Court interprets Snelling's claims against these Defendants as arguably alleging: (a)

4

retaliation for engaging in protected conduct in violation of the First Amendment; *see, i.e., Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); (b) deliberate indifference to a serious medical need in violation of the Eighth Amendment; *see, i.e., Estelle v. Gamble*, 429 U.S. 97, 104 (1976); (c) excessive force in violation of the Eighth Amendment; *see, i.e., Farmer v. Brennan*, 511 U.S. 825, 833-834 (1994); (d) violations of his Fourteenth Amendment rights to substantive and procedural due process; *see, i.e., Sandin v. Conner*, 515 U.S. 472, 483-484 (1995); and, (e) conspiracy, perhaps under 42 U.S.C. § 1985(3) ("Depriving persons of rights or privileges"). *See, i.e., Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987), *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 829 (1983).

It is not clear to the Court whether Snelling's claims about access to the law library or religious services are independent of his First Amendment claims (such as under its "free exercise" or to "petition the Government for a redress of grievances" clauses), or simply illustrations of the types of adverse actions to which Snelling says he has been subjected, as a result of alleged retaliation. However, as will become evident, those questions need not be resolved now.

B. Snelling is required to exhaust administrative remedies for his 42 U.S.C. § 1983 claims regarding prison conditions.

Lawsuits by prisoners are governed by 42 U.S.C. § 1997e. Among other things, this statute provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) ("Applicability of administrative remedies").

5

The PLRA's exhaustion requirement applies to all inmate suits about prison conditions. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, the PLRA exhaustion requirement requires proper exhaustion. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. Snelling was required to properly exhaust his claims by complying with the MDOC's Policy Directive 03.02.130 concerning prisoner/parolee grievances.

However, "[a] PLRA defendant bears the burden of proving that a PLRA Plaintiff has not exhausted his administrative remedies." *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012). Stated otherwise, "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

C. There are genuine issues of material fact as to whether Snelling exhausted his administrative remedies on all claims against Defendants.

When he filed the complaint, Snelling stated he had evidence to prove that he attempted to resolve his grievances. Although Snelling's MDOC Prisoner Step III Grievance Report lists approximately eighty grievance identifiers, it appears only four of them concern events that allegedly took place at ARF between April 2015 and May 2015. The Court summarizes the grievances as follows:

- ARF-15-04-0931-28f: This grievance concerns an April 17, 2015 incident where Snelling specifically names Defendants Newsome, Braman, and ARF officers. He claims they assaulted him. Defendant Eaton rejected his grievance at Step I, explaining that Snelling violated MDOC PD 03.02.103 because he was on modified access and did not obtain a Step I form from a grievance counselor before

6

submitting his grievance. His Step II grievance appeal was rejected as untimely and his Step III appeal upheld that rejection.

- ARF-15-04-0950-27a: Snelling wrote a one-page handwritten employee complaint to Internal Affairs describing the April 17, 2015 incident with Defendants Braman, Schulz, and Newsome. Defendant Eaton rejected the grievance at Step I, because it requested a review of a hearing officer's decision. His Step II grievance appeal was rejected as untimely and his Step III appeal upheld that rejection.

- ARF-15-04-0952-28a: This grievance is not included in the exhibits. However, by sequence it was initiated in April 2015.

- ARF-15-05-1046-28f: Snelling wrote a two-page handwritten employee complaint alleging retaliation by Defendants on April 30, 2015. Defendant Eaton rejected his grievance at Step I, explaining that Snelling violated MDOC PD 03.02.103 because he was on modified access until May 24, 2015, and did not obtain a Step I form from a grievance counselor before submitting his grievance. His Step II grievance appeal was rejected as untimely and his Step III appeal upheld that rejection.

 1. The Court denies Defendants' motions for summary judgment for failure to exhaust claims that arose from April 17, 2015 through April 30, 2015.

  a. There is a genuine issue of material fact as to whether Snelling's Step I grievances in ARF-0931 and ARF-1046 were properly rejected for violation of MDOC PD 03.02.130 ¶ KK.

MDOC PD 03.02.130 ("Prisoner/Parolee Grievances") contains several

paragraphs regarding modified access to the prisoner/parolee grievance procedure.

*See id.*, effective July 9, 2007, ¶¶ HH-LL. In part, the policy directive states:

> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph G. . .

*Id.* ¶ KK.

7

As Defendants point out, these grievances were rejected because Snelling wrote grievances while on modified access without obtaining the form from the grievance coordinator. Yet, the propriety of these rejections is not clear. ARF-1046 appears to have been associated with an undated employee complaint. More importantly, it appears that Snelling completed the Step I grievance form ARF-1046 on May 1, 2015 (Friday), and represented that he kited Grievance Coordinator Eaton on April 29, 2015 (Wednesday) to obtain a grievance form while on modified status, but did not receive a response. ARF-1046 was then rejected on Friday, May 1, 2015 for failure to follow MDOC PD 03.02.103, without further comment.

As to ARF-0931, the respondent's April 21, 2015 notes rejecting it suggest that Snelling was too hasty by kiting on Friday (April 17, 2015) and completing his Step I grievance on Sunday (April 19, 2015). As to both grievances, the Court is not in a position to conclude that these grievances were properly rejected under MDOC PD 03.02.130 ¶ KK.

> b. There is a genuine issue of material fact as to whether Snelling's Step I grievance in ARF-0931 was properly rejected because Snelling was "required to put down [his] grievance issue and who [he is] grieving."

MDOC PD 03.02.130 provides, in part: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (*i.e.*, who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included."

However, among other things, Snelling's Step I grievance in ARF-0931 describes an April 17, 2015 incident and states, "ARF officers proceeded to excessively use force

8

on prisoner . . ." and "[b]oth Braman & Newsome unrightfully assaulted prisoner in plain view of camera." The Court is perplexed by the Step I respondent's statement that Snelling needed to "put down" his grievance issue and who he was grieving.

      c.  There is a genuine issue of material fact as to whether Snelling's Step II grievance appeals in ARF-0931, ARF-0950 and ARF-1046 were properly rejected as untimely.

It appears Snelling's Step II appeals in ARF-0931 and ARF-0950 were due to Eaton by May 14, 2015. However, they were dated May 17, 2015 and were not received at Step II until June 3, 2015. Handwritten notes on the forms suggest that Snelling may not have received the Step II grievance appeal forms until after May 14, 2015. Moreover, while Snelling's Step II appeal in ARF-1046 was due to Eaton by May 19, 2015, his appeal is dated May 13, 2015, but was not received at Step II until June 3, 2015. As to the processing of this grievance, the person(s) responsible for this delay is not identified.

      d.  Snelling was permitted to appeal the rejections of grievances ARF-0931, ARF-0950 and ARF-1046 without filing new grievances.

The MDOC's prisoner grievances policy directive sets forth several bases on which grievances may be rejected. *See* MDOC PD 03.02.130 ¶¶ F & G. Although each of these grievances was rejected at Step I on procedural grounds, the substance of Snelling's Step II grievance appeal in ARF-931 contends, in part, that the Grievance Coordinator was kited to request a grievance form for the April 17, 2015 incident, and the substance of Snelling's Step II grievance appeal in ARF-0950 contends the grievance was rejected carelessly.

"A grievant whose grievance is rejected may appeal the rejection to the next step

9

as set forth in this policy. A new grievance shall not be filed regarding the rejection."
MDOC PD 03.02.130 ¶ I.

It is also worth noting that each of these three grievances was pursued through
Step III.

e.  There is a genuine issue of material fact as to the content of ARF-0952.

The MDOC Prisoner Step III Grievance Report documents the existence of ARF-0952, which was returned to Snelling on November 19, 2015, requesting Step I & II documents. Defendants neither discuss nor provide substantive evidence of ARF-0952, which this Court presumes is the fourth grievance to which they refer. If Defendants contend that ARF-0952 – which appears by its sequenced number to have been filed after ARF-0950 but on or before April 30, 2015 - did not grieve an ARF incident that occurred within the time period alleged in the complaint - April 17, 2015 through April 30, 2015 – it was incumbent on Defendants to demonstrate that to the Court. They did not.

f.  Snelling's response, albeit not verified, takes issue with access to the grievance process.

Snelling suggested that Defendants hampered his efforts to effectively grieve. Some of his descriptors are: (1) "blocking or misleading grievant into not being able to file effective or timely grievances by Grievance Coordinator J. Eaton;" (2) "invalidly refused and slid under the rug by J. Eaton[;]" and, (3) "making fabricated responses to try and negate Snelling's grievances."

It is entirely possible that Snelling failed to exhaust his administrative remedies.

However, it is also entirely possible that he made every reasonable and required effort to do so but was hampered. Based upon the record, the Court cannot conclude, as Defendants argue, that Snelling's failure to adhere to MDOC's grievance procedure deprived the MDOC of an opportunity to resolve the allegations contained in his lawsuit through its administrative process or that Snelling's failure to follow the MDOC's requirements prevented the MDOC from addressing and reviewing his claims on the merits.

Moreover, to the extent Defendants points to Snelling's Step III Grievance Report as evidence that Snelling is very familiar with the MDOC grievance process- suggesting that the number of Snelling's grievances appealed to Step III means he "failed to exhaust his grievance regarding the incidents alleged in his complaint, and he is now attempting to avoid this issue[,]" - Snelling's familiarity with the grievance system may instead indicate he was entirely correct to pursue ARF-931 and ARF-950 on the basis that these were improperly rejected. Snelling's familiarity with the grievance system cuts both ways. Contrary to the inferences Defendants urges on the Court, Snelling's extensive experience with the grievance process can just as easily lead to an inference that he is less likely to miss a required administrative step than other prisoners are.

Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence. *See Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (citing *Jones*, 549 U.S. at 216); *see also Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012). The standard of review for dispositive motions under Fed. R. Civ. P. 56 requires that such inferences must be

11

drawn in the light most favorable to Snelling. *Pure Tech Sys., Inc.*, 95 F. App'x at 135.

If Defendants are relying upon Snelling's failure to properly exhaust ARF-0931, ARF-0950, ARF-0952 and ARF-1046 as the basis for their dispositive motions, they have not satisfied their burden of proof. There are genuine issues of material fact as to (a) to the subject matter of ARF-0952; (b) the propriety of the rejections of ARF-931; and, (c) ARF-950 and ARF-1046 at Steps I and II.

> 2.   The Court does grant Defendants' motions for summary judgment for failure to exhaust claims that arose between May 1, 2015 and May 18, 2015.

The Court dismisses Snelling's claims which arose between May 1, 2015 and May 18, 2015. Of the six ARF Grievance Identifiers listed on Snelling's MDOC Prisoner Step III Grievance Report pursued through Step III or otherwise, none appears to relate to events occurring in May 2015. Moreover, the Court does not interpret Snelling's complaints of difficulty with the grievance process – such as his claim that Grievance Coordinator J. Eaton did not respond to Snelling's kite requesting a grievance form while he was on modified access status - as explanations for failing to initiate the grievance process as to claims arising in May 2015.

The Court concludes that Snelling has not grieved or exhausted his available administrative remedies regarding claims that arose between May 1, 2015 and May 18, 2015.

D.   The Eleventh Amendment bars Snelling's claims for monetary damages against Defendants in their official capacities.

Snelling sues Defendants in their official and personal capacities. His claim for relief seeks, among other things, various forms of monetary damages. However, as

Defendants argue, "the Eleventh Amendment bars official capacity claims for damages against state officials." *Moncier v. Jones*, 557 F. App'x 407, 409 (6th Cir. 2014) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989)).

The Court dismisses Snelling's official capacity claims for monetary damages.

## E. Conclusion

A genuine issue of material fact remains as to whether Snelling exhausted administrative remedies concerning claims which allegedly arose between April 17, 2015 and April 30, 2015. Snelling failed to exhaust administrative remedies concerning claims which allegedly arose between May 1, 2015 and May 18, 2015. Finally, the Eleventh Amendment bars Snelling's claims for monetary damages against Defendants in their official capacities.

Defendants' motions for summary judgment are **GRANTED IN PART** and **DENIED IN PART**.

**IT IS ORDERED.**

/s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:   11/1/16

The undersigned certifies that a copy of this document was served on the attorneys of record and Thomas Snelling by electronic means or U.S. Mail on November 1, 2016.

s/Linda Vertriest
Deputy Clerk

13